UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICK PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:16 C 220 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| SPECTRACORP OF TENNESSEE, ) | |
| d/b/a FANN MECHANICAL CO., ) | |
| and RANDALL FANN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Defendants Spectracorp of Tennessee, d/b/a Fann Mechanical Co. ("Spectracorp"), and Randall Fann's motion in limine. (Mot (Dkt. No. 27).) Defendants request that we prohibit any reference to Fann's racial or derogatory speech directed at any individual other than Perkins. (*Id.* at 1.) For the reasons stated below, we deny Defendants' motion.

## BACKGROUND

Perkins, who is African American, claims that he worked for twelve years as an employee of Spectracorp, a business that provides plumbing, electrical, and HVAC services. (Am. Compl. (Dkt. No. 19) ¶¶ 8–11.) Perkins alleges he regularly worked more than forty hours a week but that Defendants failed to pay him legally required minimum wages and overtime pay. (*Id.* ¶¶ 15–19.) During his work for Defendants, Perkins contends Fann used racially derogatory terms in the workplace, and that Perkins was subjected to a racially hostile work environment. (*Id.* ¶¶ 12, 24, 28–36.) Perkins states that his employment with Defendants ended in January 2016 and that Defendants terminated him on account of his race. (*Id.* ¶¶ 13–14; Pretrial Order (Dkt. No. 38) at 1.)

In February 2016, Perkins initiated the present suit, alleging Spectracorp failed to pay wages required by the Fair Labor Standards Act of 1938 ("FLSA") and Tennessee Wage Regulation Act, or in the alternative, unjust enrichment. (Am. Compl. (Dkt. No. 19) ¶¶ 25–36; Pretrial Order at 1–2.) Perkins also alleges Defendants racially discriminated against him in violation of the Tennessee Human Rights Act ("THRA"). (*Id.*)

## LEGAL STANDARD

We have broad discretion, based on our "inherent authority to manage the course of trials," when ruling on evidentiary questions presented in motions in limine. *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4 (1984); *Jackson v. O'Reilly Auto. Stores, Inc.*, 131 F. Supp. 3d 756, 757 (M.D. Tenn. 2015). "The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures—including motions *in limine*—in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Finally, a ruling on a motion in limine is "subject to change as the case unfolds," and we accordingly reserve the option of revisiting our preliminary evidentiary determinations as appropriate at trial. *Luce*, 469 U.S. at 41–42, 105 S. Ct. at 463; *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## ANALYSIS

Defendants filed a motion in limine requesting we prohibit any references to Fann's "use of racial or derogatory speech or language directed at any other individual other than Plaintiff," and only allow references of such language in "instances directly involving Plaintiff" limited to the time period beginning six months before the "adverse action" against him. (Def. Mot. at 1.) Defendants cite no case law in support of their motion, arguing instead that this evidence should

2

Case 3:16-cv-00220   Document 57   Filed 12/01/17   Page 2 of 6 PageID #: 174

be excluded under Federal Rule of Evidence 403 as "more prejudicial than probative." (*Id.*) Perkins objects to Defendants' motion, arguing any of Fann's derogatory language directed at Perkins or others is both admissible and "highly probative." (Pl. Resp. (Dkt. No. 31) at 1.) Perkins argues such comments support his claim that Spectracorp maintained a hostile work environment and demonstrate that his employer was on notice of Fann's hostilities. (*Id.*)

Perkins brings his racial discrimination claim under the THRA, which states employers illegally discriminate if they "[f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment . . . ; or Limit, segregate or classify an employee or applicants for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin." T.C.A. §§ 4-21-401(a)(1)–(2); Am. Compl. at 5–6. To succeed in a hostile work environment claim based on race under THRA, Perkins must establish (1) he was the member of a protected class, (2) he was subjected to harassment based on his protected status, (3) the harassment unreasonably interfered with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment, and (4) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 752 (M.D. Tenn. 2010). "In determining whether there is a hostile work environment, the court must consider the totality of the circumstances, including the frequency of the conduct, its severity, and the degree to which it interferes with work performance." *Fite*, 686 F. Supp. 2d at 752 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22, 114 S. Ct. 367, 370–71 (1993)). The work environment must be both objectively and subjectively hostile, meaning "the conduct must be severe or pervasive enough to create an environment that a reasonable person

would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

As a preliminary matter, both state and federal law guide our interpretation of admissible evidence with respect to Perkins' hostile work environment claim under the THRA. The THRA explicitly states that it aims to "Provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972 . . . ." T.C.A. § 4-21-101(a)(1). Considering this directive, courts have repeatedly held that federal law applies to THRA claims. *Fite*, 686 F. Supp. 2d at 52 (clarifying that hostile work environment claims under the THRA follow the standards for similar claims under Title VII and 42 U.S.C. § 1981); *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 835 (Tenn. 1997) ("We, therefore, may look to federal interpretation of Title VII for guidance in enforcing our own anti-discrimination statute."); *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003) ("Because of the commonality of purpose between the Tennessee Human Rights Act and the federal statutes, we may look to federal law for guidance in enforcing our own anti-discrimination laws.") (internal quotation marks and citation omitted).

We next consider whether Fann's racially derogative statements not "directly involving" Perkins are admissible because they are relevant to prove Perkins' hostile work environment claim. Courts in the Sixth Circuit have repeatedly explained that derogatory statements of co-workers directed at other people, even those made outside of plaintiff's presence, should be considered in hostile work environment suits. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335–36 (6th Cir. 2008) ("[W]e may consider evidence of other acts of harassment of which a plaintiff becomes aware during the period his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence."); *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 453–55 (6th Cir. 2004) (considering incident where

4

plaintiff overheard a manager use a racial slur as relevant to a hostile work environment claim); *Jackson v. Quanex Corp.*, 191 F.3d 647, 660–61 (6th Cir. 1999) ("[A]n employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself. . . . [R]acial epithets need not be hurled at the plaintiff in order to contribute to a work environment that was hostile to her."); *Atkins v. LQ Mgmt., LLC*, 138 F. Supp. 3d 961, 977–78 (M.D. Tenn. 2015) (considering racially derogatory statements made by a supervisor not directed at plaintiffs including comments plaintiffs learned about from their co-workers). Indeed, because a fact finder must consider the totality of circumstances in determining whether a plaintiff established workplace hostility, "considering only offensive acts directed at the plaintiff would 'defeat the entire purpose of allowing claims based upon a "hostile work environment" theory, as the very meaning of "environment" is "[t]he surrounding conditions, influences, or forces which influence or modify."'" *Hawkins*, 517 F.3d at 336 (citing *Jackson*, 191 F.3d at 661) (internal citation omitted).

Furthermore, we agree with Perkins that offensive statements made by Fann to others establish whether or not Perkins' employer knew about alleged harassment, a key element in establishing employer liability. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) ("An employer is liable if it 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'") (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 n.11 (6th Cir. 1994)); *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1020 (M.D. Tenn. 2003) (finding actions taken by employer in response to "incidents involving workers other than plaintiff" are relevant to the analysis of the sufficiency of the employers' corrective action). We accordingly find any racially derogatory statements

5

Fann made in the workplace, even incidents not "directly involving" Perkins, to be both admissible and probative of Perkins' THRA claim.

Defendants further request that we limit any testimony regarding Fann's allegedly offensive language to incidents within the six months "preceding the adverse action allegedly taken by Defendants against Plaintiff." (Def. Mot. at 1.) In evaluating hostile workplace claims, evidence of prior discriminatory acts may be admissible as "relevant background evidence for demonstrating a racially hostile work environment," including acts occurring before the hostile environment period or before a plaintiff's employment. *Austion v. City of Clarksville*, 244 F. App'x 639, 650 (6th Cir. 2007) (considering evidence of racist events occurring during the decade before plaintiff's employment by defendant); *see also Hawkins*, 517 F.3d at 337–38 (considering occurrences before plaintiff's employment commenced as relevant and probative in establishing a hostile work environment). We accordingly deny Defendants' motion to limit the admission of any racially hostile statements made by Fann to a specific time period.

## CONCLUSION

For the aforementioned reasons, we hereby deny Defendants' motion in limine. It is so ordered.

/s/ Marvin E. Aspen

Marvin E. Aspen
United States District Judge

Dated: December 1, 2017
Chicago, Illinois

6

Case 3:16-cv-00220  Document 57  Filed 12/01/17  Page 6 of 6 PageID #: 178